**UFE INCORPORATED, Plaintiff,**

v.

**METHODE ELECTRONICS, INC. and Technical Components Co., Inc., Defendants.**

**Civ. No. 4–90–103.**

United States District Court, D. Minnesota, Fourth Division.

Oct. 2, 1992.

Jeff H. Ecklund, Anne V. Simonett, and Faegre & Benson, Minneapolis, MN, for plaintiff.

Lynn G. Truesdell, Frederick E. Finch, and Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, MN, and Richard Jacobson, and Keck, Mahin & Cate, Chicago, IL, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants' motion for judgment as a matter of law, plaintiff's motion to alter or amend judgment or for judgment as a matter of law, or in the alternative, for a new trial on damages, plaintiff's motion for witness and attorney's fees, costs and disbursements, and plaintiff's motion for prejudgment interest. Based on a review of the file, record and proceedings herein, the court denies defendants' motion for judgment as a matter of law, denies plaintiff's motion to alter or amend judgment or for judgment as a matter of law, denies plaintiff's motion for a new trial on damages, denies plaintiff's motion for witness and attorney's fees, costs and disbursements, and grants plaintiff's motion for prejudgment interest.

## BACKGROUND

This matter came before the court in a jury trial from February 18, 1992, to March 6, 1992. Various claims were submitted to the jury by way of a special verdict, including UFE's claims for breach of contract, promissory estoppel, equitable estoppel, unjust enrichment and negligent misrepresentation.[1] The jury returned their answers on March 9, 1992 and on April 13, 1992, the court entered judgment in UFE's favor on

---

1. A claim of fraudulent misrepresentation was also submitted to the jury. The jury found in favor of defendants and neither side made any posttrial motions concerning that claim.

its breach of contract claim, and awarded UFE damages in the amount of $365,031.[2]

■ The jury also found that defendants were promissorily estopped from denying the existence of the requirements contract, and that UFE's reliance on defendants' promises resulted in $80,000 in damages. However, based on the jury's finding that a requirements contract existed between the parties, the court entered judgment in favor of defendants on plaintiff's promissory estoppel claim based on its determination that the breach of contract and promissory estoppel claims were mutually exclusive. *See, e.g., Del Hayes & Sons, Inc. v. Mitchell,* 304 Minn. 275, 230 N.W.2d 588, 593 (1975) ("Promissory estoppel is the name applied to a contract implied in law where no contract exists in fact", and thus doctrine is wholly inapplicable in situations where an actual contract exists).

■ Based on the jury's finding of a requirements contract, the court also entered judgment in defendants' favor on UFE's negligent misrepresentation claim. Minnesota law does not recognize an independent tort for conduct that merely constitutes a breach of contract and after hearing the evidence, the court concluded that UFE based its misrepresentation claim on the same conduct underlying defendants' breach of the requirements contract. *See, e.g., Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775, 790 (1975). The court also entered judgment in defendants' favor on UFE's equitable estoppel claim, finding that the equitable estoppel claim was another alternative to its breach of contract claim. The court further determined that UFE was entitled to no damages on the equitable estoppel claim because such damages would be duplicative of those awarded for the breach of contract claim.

Although the jury found damages in the amount of $105,300 for UFE's claims of negligent misrepresentation and equitable

estoppel, for the foregoing reasons, the court entered judgment in favor of defendants' on those claims.

■ Finally, the court entered judgment in favor of defendants on UFE's unjust enrichment claim, determining that under Minnesota law, when a jury finds that a contract exists and has been breached, a plaintiff cannot also recover under a theory of unjust enrichment. *See, e.g., United States Fire Ins. Co. v. Minnesota State Zoological Bd.,* 307 N.W.2d 490, 497 (Minn. 1981) (citing *Cady v. Bush,* 283 Minn. 105, 166 N.W.2d 358 (1969)). The court entered judgment in defendants' favor despite the fact that the jury awarded $132,374 in damages on that claim.

In summary, the court entered judgment in UFE's favor on its breach of contract claim, and judgment in favor of defendants on UFE's remaining claims. UFE now moves for entry of judgment in its favor on its claims of promissory estoppel, negligent misrepresentation, equitable estoppel and unjust enrichment. UFE further seeks damages totalling $682,705, which represents the total amount of damages set forth in the special verdict form, and argues that the evidence supports an award of all of those damages. In the alternative, UFE seeks a new trial concerning damages.

Defendants also move for judgment as a matter of law on all of UFE's claims. Defendants claim that UFE's breach of contract claim fails because the alleged requirements contract is barred by the statute of frauds, Minn.Stat. § 336.2–201. Defendants further contend that there was no evidence from which a reasonable jury could have found that the parties agreed on a durational term in the alleged contract, and that in the absence of such an agreed upon term, the contract was one that defendants could terminate at will.

---

**2.** The court entered judgment in UFE's favor on the breach of contract claim based on the jury's determination that a requirements contract existed between the parties for the production of plastic parts for air bags, and that defendants breached that contract. The damages awarded represent the damages UFE suffered as a result of the Ford and Chrysler programs. In accordance with the special verdict form, the court also found that UFE suffered no damages as a result of any breach of the requirements contract concerning General Motors.

Defendants claim that UFE's promissory estoppel claim fails because defendants' statements were too general to support any claim for promissory estoppel. They argue that UFE's promissory estoppel claim further fails because UFE failed to demonstrate that defendants either intended or expected that UFE would rely on the statements at issue.

Defendants further contend that UFE's claims of negligent misrepresentation and equitable estoppel fail because they seek damages for purely economic losses, and that the Uniform Commercial Code provides the exclusive remedy for such losses. Defendants further contend that UFE cannot recover on a claim of unjust enrichment because there has been no evidence to support such claim under Minnesota law. Thus, defendants seek judgment as a matter of law on all of UFE's claims.[3]

If the court does not grant judgment to defendants as a matter of law, then in the alternative, defendants ask the court to enter judgment in UFE's favor in the amount of $418,191.45, representing the jury's damage award of $365,031 on UFE's breach of contract claim, plus prejudgment interest in the sum of $53,160.45.[4]

Defendants finally ask that if a new trial on the issue of damages were to be held, that the court permit a new trial on all issues and deny UFE's motion for a new trial solely on damages.

UFE also moves, pursuant to Minnesota state law, for an award of attorney's fees, costs and disbursements in the amount of $453,209.58, arguing that defendants acted in bad faith by improperly withholding production drawings critical to UFE damages' analysis. On February 19, 1992, defendants reduced the damages requested in their counterclaim by $122,900, and UFE contends that this action constitutes further evidence of bad faith and harassment.

Defendants respond that they never intentionally withheld documents or delayed their production, and that UFE's claims of prejudice resulting from any late production are disingenuous. Defendants further claim that they were acting in good faith when they reduced the damages requested in their counterclaim.

UFE finally moves for prejudgment interest on its damages. If the court denies defendants' motion for judgment as a matter of law, defendants do not oppose UFE's request for prejudgment interest, but argue that prejudgment interest should be added only to damages for UFE's breach of contract claim.

## DISCUSSION

### 1. *The Parties' Motions for Judgment as a Matter of Law*

Defendants move for judgment as a matter of law on all of UFE's claims. UFE in turn moves for judgment as a matter of law on its claims for promissory estoppel, equitable estoppel, unjust enrichment and negligent misrepresentation. The court will address each of UFE's claims in turn.

### A. UFE's Breach of Contract Claim

Defendants seek judgment as a matter of law on UFE's breach of contract claim on the following grounds: 1) the statute of frauds bars the requirements contract found by the jury; 2) the integration clauses contained in the standard quotation and purchase orders exchanged by the parties preclude proof of any requirements contract; and 3) even if a requirements contract existed, there was no evidence from which a reasonable jury could have found that the parties agreed on any durational term, and thus the contract was terminable at will and defendants lawfully terminated the contract on July 27, 1988. The court will address each argument in turn.

Defendants first contend that they are entitled to judgment as a matter of law on UFE's breach of contract claim because

---

**3.** Although defendants move for judgment as a matter of law on all of plaintiff's claims, the only claim at issue is plaintiff's breach of contract claim because the court already entered judgment in favor of defendants on all of plaintiff's other claims.

**4.** UFE calculated prejudgment interest on its breach of contract damages as $53,210.32.

the requirements contract found by the jury is barred by the statute of frauds. Minnesota's Uniform Commercial Code provides that:

> Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.

Minn.Stat. § 336.2–201(2). As the court has ruled on two prior occasions, various writings, including the letter dated September 25, 1987, from UFE's Orville Johnson to defendants' William Jensen, provide sufficient confirmation of the existence of a requirements contract to overcome the statute of frauds and allow the jury to decide if a contract existed and if so, whether it had been breached. *See, e.g., Marvin Lumber & Cedar Co. v. Johnson,* 733 F.Supp. 1302, 1306 (D.Minn.1990) (holding that a letter which summarized contract terms reached during a telephone call, and was signed by the sender and received without objection, was adequate to satisfy Minnesota's statute of frauds); *Bazak Int'l Corp. v. Mast Indus., Inc.,* 73 N.Y.2d 113, 538 N.Y.S.2d 503, 535 N.E.2d 633, 637–38 (1989) (if a writing indicates an actual transaction between the parties, the statute of frauds is satisfied and plaintiff may proceed to trial on the issue of whether the parties actually entered into the alleged contract). The September 25, 1987, letter stated that it was sent "in response to [Mr. Jensen's] phone call" and refers to the contents of a telephone conversation between Jensen and Johnson. The letter then sets forth evidence of the alleged understanding between the parties: in return for UFE's agreement not to "divulge any of [defendants'] technical knowledge to any third party, nor [to] compete with [defendants] in your market with air bag products," Johnson stated UFE's "understand[ing] that [defendants] will purchase engineering ser-

vices, prototype and production molds, as well as molded components or subassemblies from UFE Incorporated with the understanding that as long as we perform to mutually agreed to standards, we will retain the production molds for manufacture of your requirements." It is undisputed that Jensen received that letter and never objected to its contents. Moreover, letters similar to the September 25, 1987, letter have been held sufficient to satisfy the statute of frauds for purposes of establishing the existence of a requirements contract. *See, e.g., Universal Power Sys. Inc. v. Godfather's Pizza, Inc.,* 818 F.2d 667, 669–71 (8th Cir.1987) (applying Missouri U.C.C., and affirming district court's denial of motions for directed verdict and judgment notwithstanding the verdict where an oral requirements contract was memorialized by a letter signed by the buyer, even though the letter failed to mention price, duration or quality terms). The court thus reaffirms that the September 25, 1987, letter reflects an agreement between the parties sufficient to overcome the statute of frauds.

■ Defendants further argue that the court improperly admitted extrinsic evidence to determine if the September 25, 1987, letter satisfied the statute of frauds. The court again rejects that argument because it misstates both the court's prior holdings and the impact of the statute of frauds. In response to defendants' motion for summary judgment and their motion in limine, the court ruled as a matter of law that the statute of frauds had been satisfied, relying solely on the writings submitted, and particularly the September 25, 1987, letter.[5] Thus, the court considered no extrinsic evidence when making that determination. Contrary to defendants' claims, there was no statute of frauds issue for the jury, and the court properly admitted both oral and written evidence regarding the existence, terms and conditions of the requirements contract itself, an issue that was properly before the jury based on

**5.** The court determined that the September 25, 1987, letter was by itself sufficient to satisfy the statute of frauds.

the court's prior rulings concerning the statute of frauds. *See, e.g., Bazak Int'l,* 535 N.E.2d at 637–39 (statute of frauds does not require that the contract itself be in writing, only that there exists some written evidence that the parties entered a contract; once court determines that statute of frauds is satisfied, plaintiff has overcome threshold hurdle and may submit oral or written evidence of the existence, terms and conditions of the alleged contract to the jury).

■ Defendants also argue that UFE proffered no evidence of any durational term in the requirements contract between the parties, and thus under the Minnesota Uniform Commercial Code, any such contract would be terminable at any will. Section 336.2–309 of the Code specifically provides that:

> (1) The time for shipment or delivery or any other action under a contract is not provided in this article or agreed upon shall be a reasonable time.
>
> (2) Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.
>
> (3) Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.

Minn.Stat. § 336.2–309. Defendants argue that the September 25, 1987, letter said nothing about the duration of the alleged arrangement, and thus any requirements contract was terminable at will under section 336.2–309. The letter states, however, that in return for UFE's promise not to compete with defendants, UFE was entitled to retain the production molds for the manufacture of defendants' requirements for "as long as [UFE] performed to mutually agreed to standards." [6] The letter reflects

an understanding that any arrangement between the parties would continue as long as UFE performed satisfactorily, and thus the requirements contract found by the jury falls within the category of contracts where the parties otherwise agree to limit the parties' termination rights under section 336.2–309(2). Minnesota law also recognizes that section 336.2–309 does not permit unilateral termination at will in cases where the contract provides that it will continue "as long as" one party performs satisfactorily. *See, e.g., Benson Cooperative Creamery Ass'n v. First District Ass'n,* 276 Minn. 520, 151 N.W.2d 422, 427 (1967) *cf. W.K.T. Distrib. Co. v. Sharp Elec. Corp.,* 746 F.2d 1333, 1335 (8th Cir. 1984) (applying Minnesota law and discussing difference between contracts terminable at will and contracts that are to continue as long as one party performs). The court further notes that a requirements contract contains a durational term by definition because it reflects an agreement to supply a specified product for as long as the buyer requires it. Thus, an agreement to enter into a requirements contract necessarily contains a durational term within the meaning of section 336.2–309(2).[7] Based on the foregoing, the court concludes that the requirements contract was not terminable at will by either party.

Even if the requirements contract did not fall into the category of contracts where the parties agree to limit termination rights under section 336.2–309(2), the court notes that there was evidence produced at trial indicating that the parties agreed on a five-year minimum term for the requirements contract. For example, James Staiger of UFE testified that he discussed a "five-year contract price" and cost-reduction "on a five-year program." (Plaintiff's Exhibit No. 49, at 2) In addition, UFE developed a five-year packaging proposal for defendants' piece parts. (Plaintiff's Exhibit No. 348A). Carol Ludington, UFE's damages

---

6. UFE argued at trial that if the requirements contract had been terminable at will, UFE would never have agreed not to compete with defendants because there was too much business at risk.

7. Thus, none of the cases cited by defendants in support their terminable at will argument involve requirements contracts.

expert, testified that defendants' documents also referred to a five-year production period. Finally, Staiger and Johnson both testified to that they expected the requirements contract to run for at least five years. Thus, there was sufficient evidence from which the jury could reasonably conclude that the parties agreed on a five-year term, thus taking the contract outside of section 336.2–309 and precluding judgment as a matter of law.[8]

■ Defendants also argue that the integration clauses contained in both UFE's quotations and defendant Technical Components' purchase orders preclude any finding that a requirements contract existed between the parties. It is undisputed that the parties exchanged various written quotations, purchase orders and invoices and that those individual documents contained integration clauses. However, if an ambiguity exists, the "question whether a contract is completely integrated is for the trier of fact." *In re Petition of Minnesota Power & Light Co.*, 435 N.W.2d 550, 563 (Minn.Ct.App.1989); *see also Donnay v. Boulware*, 275 Minn. 37, 144 N.W.2d 711, 716 (1966) (if a contract is ambiguous or reasonably susceptible to more than one meaning, extrinsic evidence admissible to "determine the meaning and intent of the parties"). Although each individual transaction may have been governed by the integration clauses, the court nonetheless concludes that an ambiguity existed concerning the interplay of the individual contracts, and whether an overall requirements contract existed. In such situations, "a writing must be read in light of the situation of the parties, the subject matter and purpose of the transaction." *In re Petition of Minnesota Power & Light Co.*,

435 N.W.2d at 563. The court further concludes that there was sufficient evidence from which a reasonable jury could find that an overarching requirements contract existed between the parties, as reflected in the September 25, 1987 letter, and that the individual transactions were negotiated and completed as part of that overall requirements contract. *See, e.g., Carolina Builders Corp. v. Howard–Veasey Homes, Inc.*, 72 N.C.App. 224, 324 S.E.2d 626, 629 (1985) (discussing individual transactions, including delivery and acceptance of various materials, invoicing and payment, as part of an overall requirements contract).[9] The court thus rejects defendants' argument that the integration clauses contained in various quotes and purchase orders precluded a finding of an overall requirements contract between the parties.

Based on the foregoing, the court reaffirms that there was sufficient evidence of a writing to satisfy the statute of frauds, and further determines that there was sufficient evidence at trial to demonstrate that the parties intended the requirements contract to last for five years or for as long as UFE performed satisfactorily, and sufficient evidence to support the jury's determination that a requirements contract existed between the two parties. Accordingly, the court denies defendants' motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50.

**B. UFE's Promissory Estoppel Claim**

■ UFE moves for either an amended judgment or judgment as a matter of law on its claim of promissory estoppel, contending there was ample evidence to support the jury's findings on that claim.[10] The court determines, however, that the evidence UFE proffered to support its

---

**8.** Based on the court's determination that there was sufficient evidence to find a five-year term for the requirements contract, the court does not address UFE's argument concerning its right to damages even if the contract were terminable at will.

**9.** The court also notes that parol evidence was admissible because there was sufficient evidence that those individual quotations or purchase orders did not reflect the "final expression" of the parties' agreement but rather formed a part of an overall requirements con-

tract. *See* Minn.Stat. § 336.2–202 (parol evidence may not be used to contradict "confirmatory memoranda" if such memoranda were intended to be "final expression" of parties' agreement, although such memoranda may be "explained or supplemented" by course of dealings).

**10.** The jury found that defendants were promissorily estopped from denying the existence of a requirements contract and that $80,000.00 would compensate UFE for its reliance on any such promise.

promissory estoppel claim was the same evidence underlying its breach of contracts claim, and that UFE produced no evidence of any promises other than those reflected in the requirements contract. Because those claims are mutually exclusive as a matter of law, and because the jury found a requirements contract in fact, UFE's promissory estoppel claims fails. Thus, the court reaffirms that judgment should be entered in favor of defendants on the promissory estoppel claim. *See, e.g., Del Hayes & Sons, Inc.,* 304 Minn. 275, 230 N.W.2d at 593 ("[p]romissory estoppel is the name applied to a contract implied in law when no contract exists in fact", and thus doctrine is wholly inapplicable in situations where an actual contract exists); *see also Sacred Heart Farmers Cooperative Elevator v. Johnson,* 305 Minn. 324, 232 N.W.2d 921, 923 n. 1 (1975) (holding that there was "no question of promissory estoppel ... presented as that doctrine is applicable to imply a contract in law where none exists in fact and here the jury found as fact upon sufficient evidence that an oral contract existed"). The court further determines that any damages on the promissory estoppel claim would be duplicative of UFE's breach of contract damages because the same evidence supported both claims. The court also notes that in its memorandum in opposition to defendants' motion for summary judgment, UFE acknowledged that its promissory estoppel claim was an alternative to its breach of contract claim. (Pl.'s Mem.Opp.Summ.J. at 3 n. 3 (July 24, 1991)). Accordingly, the court denies UFE's motion for an amended judgment or judgment as a matter of law on its promissory estoppel claim.[11]

### C. UFE's Negligent Misrepresentation Claim

Defendants contend that UFE's negligent misrepresentation claim is barred under Minnesota law. UFE responds that Minnesota law recognizes such a cause of action when a party negligently supplies information in the course of a transaction in which that party has a pecuniary interest, and further argues that sufficient evidence was presented at trial from which the jury could have concluded that defendants failed to exercise reasonable care in their communications with UFE. UFE's arguments, however, do not address the critical issue: Minnesota law does not recognize an independent tort for negligent misrepresentation based on conduct that merely constitutes a breach of contract. *See, e.g., Wild v. Rarig,* 234 N.W.2d at 790. The special verdict question concerning this claim specifically asked if defendants had engaged in any negligent misrepresentations that led UFE to believe that it would be producing plastic parts for defendants' airbag products. That same conduct underlies UFE's breach of contract claim.[12] Based on the wording of the special verdict question and the court's evaluation of the evidence at trial, the court concludes that UFE produced no evidence of any negligent misrepresentation independent of the conduct constituting breach of the requirements contract, and thus defendants are entitled to judgment as a matter of law on that claim. *Cf. ETM Graphics, Inc. v. H.B. Fuller,* 1992 WL 61394, at *2 (Minn. Ct.App. March 31, 1992) (unpublished opinion) (holding that the U.C.C. preempted plaintiff's misrepresentation claims, relying on *Hapka v. Paquin Farms,* 458 N.W.2d 683, 688 (Minn.1990)). Moreover, as the court determined in its order for judgment, any damages for negligent misrepresentation would be duplicative of the damages for breach of contract because the same conduct underlies both actions, and thus would constitute an improper recovery of

---

11. Defendants also move for judgment as a matter of law on UFE's promissory estoppel claim, arguing that the claim fails because they made no promises on which UFE could have reasonably relied. Based on the court's determination that defendants are entitled to judgment as a matter of law and its entry of judgment in defendants' favor, the court does not address defendants' motion and arguments concerning that claim.

12. In its memorandum in opposition to defendants' motion for summary judgment, UFE also acknowledged that its claim for negligent misrepresentation was merely an alternate to its breach of contract claim. (Pl.'s Mem. Opp.Summ.J. at 3 n. 3 (July 24, 1991)).

the same loss under two theories. *See Johnson v. Jensen,* 446 N.W.2d 664, 666 (Minn.1989) (holding that a plaintiff could not recover damages that were alternative rather than cumulative). The court thus denies UFE's motion for amended judgment or judgment as a matter of law on its negligent misrepresentation claim.[13]

### D. UFE's Equitable Estoppel Claim

■ UFE moves for amended judgment or judgment as a matter of law on its equitable estoppel claim, arguing that there was sufficient evidence to support both the claim and damages award, and that the U.C.C. does not bar the claim. UFE's claim, however, rested on the premise that the defendants should be equitably estopped from denying the existence of a requirements contract for the production of airbag parts. That theory became moot when the jury found that a requirements contract did exist between the parties, and thus, the court determines that this claim also fails as a matter of law.[14] The court further determines that any damages awarded for this claim would be duplicative of the damages arising from defendants' breach of the requirements contract. Thus, the court denies UFE's motion for an amended judgment or judgment as a matter of law on its equitable estoppel claim.[15]

### E. UFE's Unjust Enrichment Claim

■ UFE also moves for amended judgment or judgment as a matter of law on its unjust enrichment claim. Under Minnesota law, the theory of unjust enrichment:

is founded on the principle that no one ought unjustly to enrich himself at the expense of another, and the gist of the action is that the defendant has received money which in equity and good conscience should have been paid to the plaintiff, and under such circumstances

that he ought, by the ties of natural justice, to pay over.

*Cady v. Bush,* 283 Minn. 105, 166 N.W.2d 358, 361 (1969) (quoting *Heywood v. Northern Assurance Co.,* 133 Minn. 360, 158 N.W. 632, 633 (1916)). An action for unjust enrichment may be founded on a "failure of consideration, fraud, mistake, and in other situations where it would be morally wrong for one party to enrich himself at the expense of another." *Id.* UFE contends that there was evidence that defendants were unjustly enriched because they received the benefit of work done by UFE as well as reduced pricing by UFE during the prototype phase of the airbag programs. UFE also contends that defendants saved production costs unjustly by taking their molding requirements to cheaper suppliers. UFE argues that defendants' actions resulted in damages independent of those awarded for the breach of contract claim. In evaluating the evidence, however, the court determines that other than the conduct that constitutes defendants' breach of the requirements contract, defendants took no other actions on which a claim of unjust enrichment may be founded. The court further rejects UFE's contention that there was evidence of damages for unjust enrichment independent of those damages awarded on its breach of contract claim. The jury instruction given for breach of contract damages specifically stated that:

If you should find, from a preponderance of the evidence in this case, that UFE is entitled to a verdict from its breach of contract claim, the law provides that UFE could be fairly compensated for *all damages,* if any, to its business or property which were proximately caused by the defendants' conduct. *Such damages are intended to make a party whole.*

---

**13.** Based on its determination that defendants are entitled to judgment on this claim, the court does not address their motion or arguments for judgment as a matter of law.

**14.** UFE previously conceded that its equitable estoppel claim was an alternative to its breach of contract claim. (Pl.'s Mem.Opp.Summ.J. at 3 n. 3 (July 24, 1991)).

**15.** Based on the court's determination that the theories underlying the equitable estoppel and breach of contract claims were mutually exclusive, the court does not address the arguments concerning U.C.C. preemption of the equitable estoppel claim.

Therefore, in arriving in the amount of the award, if any, you may include any loss of profit damages suffered by UFE for work defendants did not allow UFE to perform, as well as unpaid invoices for work performed. Loss profits are profits which UFE would have made, but for the unlawful conduct of the defendants.

Jury Instruction No. 27 (emphasis added). The court concludes that the instruction clearly informed the jury that it was to award UFE all of the damages that would make UFE whole. Those damages would include the damages amounts that UFE now contends support its unjust enrichment claim. Thus, the court again refuses to award damages duplicative to those awarded for the breach of contact claim, and denies UFE's motion for amended judgment or judgment as a matter of law for its unjust enrichment claim.

Based on the foregoing, the court denies defendants' motion for judgment as a matter of law on UFE's breach of contract claim and further denies UFE's motion for amended judgment or judgment as a matter of law on its promissory estoppel, equitable estoppel, negligent misrepresentation and unjust enrichment claims.

### 2. *UFE's Motion for a New Trial on Damages*

■■■ UFE argues that the court should grant a new trial on damages if the court determines that damages should be awarded only on the breach of contract claim. As the court previously determined, however, once the jury found that a requirements contract existed between the parties, UFE's other claims fail, either because the theories are mutually exclusive, like UFE's promissory estoppel claim, or because UFE failed to produce evidence to support those alternate claims independent of the conduct that constituted defendants' breach of the requirements contract.

UFE nonetheless argues that it is entitled to all the damage amounts set forth in the special verdict form, and that the verdict is entitled to a presumption of regularity. UFE contends that damages may be properly awarded under alternative causes of action where those damages arise from separate losses. *Cole v. Control Data Corp.*, 947 F.2d 313, 320–22 (8th Cir.1991). The court concludes, however, that the challenged damages do not constitute separate losses because UFE failed to produce any evidence to support its four other claims independent of the conduct challenged by its breach of contract claim. Thus, the court is determines that the requested damages would be duplicative. *See, e.g., Greenwood Ranches, Inc. v. Skie Constr. Co.*, 629 F.2d 518, 521–22 (8th Cir. 1980) (applying South Dakota law and holding that a plaintiff cannot recover for the same loss under alternate theories). Moreover, the court concludes that the jury was properly instructed under the breach of contract claim to make UFE whole, and thus the damage award for the breach of contract claim represents the total damages that UFE is entitled to. Accordingly, the court rejects UFE's arguments concerning the special verdict form.

Moreover, as previously noted, UFE's argument is flawed because it fails to address the legal inconsistencies between the alternate theories and Minnesota case law which specifically precludes recovery on various claims that arise solely on conduct that constitutes a breach of contract. Thus, UFE's requested relief presents more than a danger of duplicative damages, the various claims also constitute either legally inconsistent theories or claims that UFE failed to prove as a matter of law. Moreover, based on the court's determination that the breach of contract damage instruction clearly instructed the jury to make UFE whole, the court determines that even if the four other claims were not legally inconsistent with plaintiff's breach of contract claim, the damages award for those claims would be duplicative.

■■■ UFE also moves for a new trial based on various evidentiary rulings. UFE first argues that the court improperly struck from the record the Chrysler Acustar purchase order. (Plaintiff's Exhibit No. 226). At trial, the court refused to admit that exhibit, finding it irrelevant under Rule 402 of the Federal Rules of Evidence

because the exhibit had never been sent to UFE, and in fact, had never left the premises of defendant Technical Components. Even if the exhibit were relevant, the court determined that under Rule 403 the exhibit's probative value was substantially outweighed by the danger of unfair prejudice to defendants, and that the exhibit would cause juror confusion. Examining the record, the court concludes that the exhibit was properly excluded under Rule 402 and Rule 403.

 UFE also contends that the court improperly restricted its cross-examination of defendants' damages expert, Bruce Burton. UFE first contends that the court improperly limited UFE's cross-examination regarding the definition of commodities. During that portion of the cross-examination, UFE's counsel was apparently trying to demonstrate that a product must be traded on a commodities exchange in order to be deemed a commodity. Examining the record, the court concludes that UFE's cross-examination on that issue was properly limited because it was both incorrect and argumentative.

The court also determines that UFE's cross-examination regarding Mr. Burton's regression analysis was properly limited based on its conclusion that UFE's counsel was misusing various calculations in an attempt to show that Burton's regression analysis was misleading. The court further concludes that it properly sustained defense counsel's objections to UFE's cross-examination of Mr. Burton regarding UFE's non-competitive prices: the cross-examination objected to was both argumentative and repetitive. The court thus rejects UFE's contention that the court improperly restricted the cross-examination of Mr. Burton.

Based on the foregoing, the court denies UFE's motion for a new trial on damages

and defendants' motion for a new trial on all issues.[16]

### 3. *Plaintiff's Motion to Alter or Amend Judgment to Include Witness and Attorney's Fees, Costs and Disbursements*

 UFE seeks an award under Minnesota state law of witness and attorney's fees, costs and disbursements in the amount of $453,209.58, arguing that defendants improperly failed to produce documents crucial to UFE's damages analysis until just prior to trial and that defendants improperly withdrew a substantial portion of their counterclaim immediately before trial. UFE relies on Minn.Stat. § 549.21, subd. 2, which states that:

> Upon motion of a party or upon the court's own motion, the court in its discretion may award to that party costs, disbursements, reasonable attorney fees and witness fees if the party or attorney against whom costs, disbursements, reasonable attorney and witness fees charged acted in bad faith; asserted a claim or defense that is frivolous and that is costly to the other party; asserted an unfounded position solely to delay the ordinary course of proceedings or to harass; or committed a fraud upon the court. An award under this section shall be without prejudice and as an alternative to any claim for sanctions that may be asserted under the rules of civil procedure.

The court previously ruled on UFE's complaint about defendants' late production of the drawings, holding that defendants could not use those drawings to impeach the damage reports of UFE's expert. Examining the record, the court concludes that defendants complied with that ruling. In addition, some of the testimony about which UFE now complains was elicited by

---

**16.** UFE also suggests that court should award all the damages listed in the special verdict form because that was the jury's intent. Even if that were the jury's intent, such intent does not eliminate the fatal flaw in UFE's argument: once the jury determined that a requirements contract existed, UFE's other theories were either inconsistent or unproven. Thus, the jury's desire to

award damages on legally flawed claims is irrelevant. The court notes that the present case is similar to a negligence case in which the jury finds that a defendant is not negligent and yet awards damages to the plaintiff. Even if the jury intended to award that plaintiff damages, its intention becomes legally irrelevant based on its finding that the defendant was not negligent.

UFE's counsel during the cross-examination of defendants' damages expert.[17] The court further rejects UFE's claims that it was prejudiced as a result of the late production of the drawings. Before trial, UFE argued that it had been prejudiced because if the drawings had been produced earlier, UFE would have been able to demonstrate higher prices than those reported by its expert. Now, UFE speculates that those drawings would have allowed UFE to show lower prices. Moreover, UFE's expert had the drawings for 15 days before she testified. Based on its previous ruling limiting defendants' impeachment, and UFE's failure to demonstrate any prejudice or bad faith, the court finds that defendants' actions concerning the production drawings provide no basis on which to award UFE any witness or attorney's fees, costs or disbursements.

The court further rejects UFE's allegation that defendants' agreement to reduce the damages sought by their counterclaim was intended to harass UFE or derail its trial strategy. Defendants claim that they withdrew their request for those damages as soon as they discovered that a third party had paid the invoices underlying that claim. UFE proffers no evidence to support its claims that defendants were thereby acting in bad faith, and thus the court concludes that defendants' actions in withdrawing that claim provide no basis on which to award UFE any fees, costs or disbursements.

Based on the foregoing, the court denies UFE's motion for witness and attorney's fees, costs, and disbursements. The court similarly rejects defendants' request that UFE should be sanctioned for making the motion.

### 4. Plaintiff's Motion to Amend the Judgment to Include Prejudgment Interest

UFE also moves for an award of prejudgment interest pursuant to Minnesota state law. Defendants apparently do not oppose the motion in the event that the court determines that UFE is entitled to breach of contract damages. Accordingly, UFE's motion to alter judgment to include prejudgment interest in the amount of $53,-210.31 is granted.[18]

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for judgment as a matter of law is denied;

2. Plaintiff's motion to amend or for judgment as a matter of law on its equitable estoppel, promissory estoppel, negligent misrepresentation and unjust enrichment claims is denied;

3. Plaintiff's motion for a new trial on damages is denied;

4. Defendants' motion for a new trial is denied;

5. Plaintiff's motion to alter or amend the judgment to include attorney's fees, witness fees, costs and disbursements is denied;

---

**17.** For example, in his cross-examination of Burton, UFE's counsel stated that:

> The drawings are crucial to the damage analysis, and here to the production of the drawings, which I had placed in issue before, has cropped up. I want to make sure that, in [defense counsel's] redirect, that he doesn't delve into the subject of the drawings and how they have impacted on the prices here.

At that point, defense counsel observed that it was UFE's counsel who raised the subject with Burton. The court agreed, stating that:

> I agree with that. So in fact you have opened the door, and the expert has walked through it. But, at this point, if what you are wanting me to do is to restrict [defense counsel] from going any farther with that issue, I will do so.

**18.** Prejudgment interest is to calculated pursuant to Minn.Stat. § 549.09, which states that

"the interest shall be computed as simple interest per annum." Subd. 1(c). For the years 1990 and 1991, prejudgment interest was to be calculated at a rate of 7.00%; for 1992, the figure is 5.00%. Thus, the court determines that prejudgment interest on UFE's damages of $365,031.00 should be computed as follows:

> 1) Interest from January 14, 1990 until January 1, 1991 (321 days at 7%) equals $22,471.91;
> 2) Interest from January 1, 1991 to December 31, 1991 (365 days at 7%) equals $25,552.17;
> 3) Interest from January 1, 1992 to March 9, 1992 (69 days at 5%) equals $3,440.86;
> 4) Interest from March 9, 1992 to April 13, 1992 (35 days at 5%) equals $1,745.37.

Thus, UFE is entitled to prejudgment interest in the amount of $53,210.31.

6. Defendants' request for sanctions based on plaintiff's motion for fees, costs and disbursements is denied; and

7. Plaintiff's motion to amend the judgment to include prejudgment interest is granted, and judgment shall be entered in favor of plaintiff's for prejudgment interest in the amount of $53,210.31, representing prejudgment interest on UFE's breach of contract damages of $365,031.00.

LET JUDGMENT BE ENTERED ACCORDINGLY.