**Candace M. BANBURY,
et al., Appellants,**

v.

**OMNITRITION INTERNATIONAL,
INC., et al., Respondents.**

**No. C5–95–80.**

Court of Appeals of Minnesota.

July 3, 1995.

Michael A. Stern, Richard D. Snyder, Fredrikson & Byron, P.A., Minneapolis, for appellants.

William L. Killion, Gregory R. Merz, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for respondents.

Considered and decided by DAVIES, P.J., and AMUNDSON and FOLEY,* JJ.

## OPINION

DAVIES, Judge.

Appellants Candace M. and E. Terry Banbury (the Banburys) challenge summary judgment for Omnitrition International, Inc. (Omnitrition), in an action involving termination of the Banburys' distributorship. Omnitrition cross-appeals the district court's order denying its motion to dismiss the action on grounds of improper venue. We affirm.

## FACTS

Omnitrition manufactures nutritional and health products, distributing them through a multilevel marketing organization. This organization involves a network of distributors referred to as Independent Marketing Associates (IMAs). IMAs recruit other IMAs, creating a network of IMAs. Omnitrition's IMAs receive income from their own retail sales and may also earn commissions or "overrides" from sales by IMAs whom they have recruited. An IMA qualifies to earn overrides only when all sales for that month by the IMA and the IMA's recruits total $4,000.

Ron Cashman, an Omnitrition IMA, recruited the Banburys in 1990. The Banburys signed a distributorship agreement and, as Omnitrition representatives recommended, immediately bought $4,000 worth of Omnitrition products to qualify for overrides the first month of the distributorship.

In February of 1992, three of Omnitrition's IMAs accused the Banburys of violating company rules by soliciting them to take part in another network marketing organization. In response, Omnitrition terminated the Banburys' distributorship. On appeal to Omnitrition, the Banburys admitted that they had contacted IMAs about another product. Omnitrition then denied the appeal, though it did pay all commissions due to the Banburys for 30 days after the termination.

The Banburys filed suit for damages alleging contractual and statutory violations. The district court granted Omnitrition's motion for summary judgment from which the Banburys appeal.

## ISSUES

I. Did the district court err in interpreting the distributorship contract as being terminable at will?

II. Are there genuine issues of material fact precluding summary judgment on appellants' estoppel claim?

III. Are there genuine issues of material fact precluding summary judgment on appellants' claim under the Texas Deceptive Trade Act?

IV. Did the district court err in its interpretation of the Minnesota Consumer Fraud Act?

V. Did the district court err in its interpretation of the Minnesota Franchise Act?

## ANALYSIS

■ On appeal from a trial court's grant of summary judgment, our function is to determine whether there are genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). We view the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

■ Before we reach the issues raised by the parties, we must first determine whether to apply Minnesota or Texas law to this distributorship agreement. The district court did not resolve this issue and relied on both Minnesota and Texas cases in interpreting the agreement. The agreement itself states that it is governed by the laws of the State of Texas. Generally, Minnesota courts honor agreements concerning choice of law. *Milliken & Co. v. Eagle Packaging Co.*, 295 N.W.2d 377, 380 n. 1 (Minn.1980). But in this case, neither party claims that an appli-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

cation of Minnesota law would change the outcome. Moreover, in Minn.Stat. § 80C.21 (1994), the legislature expressed an intent to protect its citizens with its own laws by voiding, to some extent, choice-of-law provisions in agreements like this. To further the legislature's policy of protecting Minnesotans, we choose not to give preclusive effect to the choice-of-law provision in the contract.

## I.

The Banburys argue that the district court erred in holding that the contract unambiguously provided for termination at will. The construction and effect of an unambiguous contract are questions of law and reviewable de novo. *Empire State Bank v. Devereaux,* 402 N.W.2d 584, 587 (Minn.App. 1987). A contract is ambiguous when the language of the written document by itself is reasonably susceptible to more than one meaning. *Trondson v. Janikula,* 458 N.W.2d 679, 681 (Minn.1990).

Two sections of the distributorship agreement relate to termination. Omnitrition relies on paragraph 12 of the contract, which states:

> [The Banburys] understand and agree that either party to this agreement may terminate this agreement by giving notice to the other party in writing thirty days in advance.

The Banburys rely on Omnitrition's Rule C–7, which is incorporated by reference into the contract. It provides:

> Should an Independent Marketing Associate/Distributor materially or repeatedly violate the terms of his or her Application and Agreement of Distributorship * * * or the Omnitrition Code of Professional Ethics, or the Rules & Regulations * * * such action would be placing their distributor status in jeopardy of being terminated * * *. If involuntary termination is deemed necessary, Omnitrition may place the distributorship * * * in suspension while notice of cause, giving reason(s) of the actual violation(s), is provided along with the opportunity to remedy the violation(s). Should satisfactory remedy not take place * * * and involuntary termination become necessary, such termination

will become effective upon notice being given, with the right of appeal, to the violating distributor.

The Banburys argue that Rule C–7 provides for termination only for cause, and with an opportunity to cure. They claim that Rule C–7 conflicts with the at-will termination provision of paragraph 12, making the contract ambiguous.

The Banburys' interpretation of Rule C–7 is, however, contrary to the clear language of the contract. Rule C–7 does not state that Omnitrition may fire an IMA *only* for cause, but rather states that material violations *may* lead to termination. Rule C–7 contains no language manifesting an intent that it constitute the exclusive basis for termination. Therefore, we must give effect to paragraph 12 as well. *See Chergosky v. Crosstown Bell, Inc.,* 463 N.W.2d 522, 525 (Minn.1990) (courts should "attempt to harmonize all clauses of [a] contract").

Construing the contract as a whole, we hold that the distributorship contract allows for termination *either* at the will of a party upon 30 days' written notice *or* for cause effective immediately, but with a right to appeal. This is consistent with prior interpretations of similar contracts as unambiguous and as allowing either party to terminate at will. *See, e.g., Polk v. Mutual Serv. Life Ins. Co.,* 344 N.W.2d 427, 429–30 (Minn.App. 1984) (where employment contract provides both for termination at will by either party and for termination for cause by employer, employer may terminate employee under at-will provision); *Martin v. Equitable Life Assurance Soc'y,* 553 F.2d 573, 575 (8th Cir. 1977) (contract providing that party may terminate either at will or for cause unambiguously reflects an intent to reserve the right to terminate at will). Thus, the district court did not err in its interpretation of the parties' distributorship agreement.

## II.

The Banburys argue that genuine issues of fact remain regarding their claim of estoppel. They assert that Omnitrition should be estopped from relying on the at-will clause of the contract because Omnitri-

tion's promissory statements and conduct led the Banburys to believe they could be terminated only for cause. But the doctrine of promissory estoppel only applies where no contract exists. *Sacred Heart Farmers Coop. Elevator v. Johnson*, 305 Minn. 324, 326 n. 2, 232 N.W.2d 921, 923 n. 1 (1975); *UFE Inc. v. Methode Elecs., Inc.*, 808 F.Supp. 1407, 1414–15 (D.Minn.1992) (claims for breach of contract and promissory estoppel are mutually exclusive as matter of law). A party cannot use the doctrine of promissory estoppel to alter a contract by using evidence that is barred by the parol evidence rule. *Jara v. Buckbee–Mears Co.*, 469 N.W.2d 727, 730 (Minn.App.1991), *pet. for rev. denied* (Minn. Aug. 2, 1991). In this case, a contract did, in fact, exist. Therefore, the Banburys' promissory estoppel claim must fail as a matter of law.

## III.

■ The Banburys asserted a claim under the Texas Deceptive Trade Act, which prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex.Bus. & Com.Code Ann. § 17.46(a) (West 1992). A false statement that induces a party to sign a contract may be a deceptive act for purposes of the Act. *American Commercial Colleges, Inc. v. Davis*, 821 S.W.2d 450, 453 (Tex.Ct.App. 1991).

■ The Banburys claim that genuine issues of material fact exist as to whether Omnitrition made false statements that induced the Banburys to become distributors. To support their allegations, the Banburys rely, in part, on Cashman's statements. But Cashman was not an agent or employee of Omnitrition; thus, his statements cannot be imputed to Omnitrition.

On this issue, the Banburys also rely on Terry Banbury's affidavit, which he submitted for the purpose of defeating summary judgment. In that affidavit, Banbury states that Jim Fobair, founder of Omnitrition, along with other Omnitrition representatives, falsely told him that if he "worked hard up front for little pay" he could enjoy "earnings for a lifetime." But these statements directly contradict Banbury's earlier deposition

testimony. At the deposition, Banbury stated that Fobair had not made any false statements and, further, that the statements Fobair had made only concerned Terry Banbury's suitability to be an IMA.

■ A self-serving affidavit that contradicts earlier damaging deposition testimony is not sufficient to create a genuine issue of material fact. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir.1983). In *Camfield*, the Eighth Circuit offered the following rationale:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Id.; accord Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991) ("party may not * * * create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony"); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543–44 (9th Cir.1975) (inconsistent statements of party did not create genuine issue of fact).

■ A subsequent affidavit may, however, raise a factual issue where the deposition itself reveals confusion or mistake; such an affidavit is not inherently inconsistent with the deposition, but rather seeks to explain it. *Camfield*, 719 F.2d at 1364–65; *see also Bank Leumi Le–Israel v. Lee*, 928 F.2d 232, 237 (7th Cir.1991) ("genuine issue of material fact cannot be established by a party contradicting his own earlier statements unless there is a plausible explanation for the incongruity").

■ In this case, Terry Banbury's deposition, taken approximately seven months prior to his affidavit, does not exhibit any signs of mistake or confusion. In fact, when Omnitrition's counsel pursued further questioning at the deposition about the alleged misrepresentations, Banbury's counsel objected, arguing in part that the topic had already been exhausted. But now, for purposes of the summary judgment motion, the Banburys rely only on Banbury's affidavit,

not on statements made in the deposition. Under these circumstances, the district court did not err in refusing to consider Banbury's affidavit as sufficient to create a material issue of fact.

## IV.

The Banburys also brought a private action alleging that Omnitrition violated the Minnesota Consumer Fraud Act. They argue on appeal that the district court erred as a matter of law in its interpretation of the Act. We disagree.

The Consumer Fraud Act provides that it is unlawful to use

any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise.

Minn.Stat. § 325F.69, subd. 1 (1992).

The Consumer Fraud Act does not apply to all allegations of fraud, but only to those where there is a nexus between the alleged fraud and the sale of merchandise. *Cooperman v. R.G. Barry Corp.*, 775 F.Supp. 1211, 1213 (D.Minn.1991). In *Cooperman*, a federal district court held the Minnesota Consumer Fraud Act inapplicable because the alleged fraud related to plaintiff's employment relationship, not to the sale of merchandise. *Id.* at 1213–14.

We agree with that court's analysis and find it applicable to this case. The Banburys do not allege that Omnitrition made any misrepresentation about the sale of merchandise, but only about their distributorship relationship. Thus, the district court did not err in granting summary judgment on the Consumer Fraud Act claim.

## V.

The Minnesota Franchise Act was adopted in 1973 to protect potential franchisees from unfair contracts and other abuses. *Martin Investors, Inc. v. Vander Bie*, 269 N.W.2d 868, 872 (Minn.1978). For there to be a franchise, the act requires, inter alia, a franchise fee to be paid, either directly or indirectly. Minn.Stat. § 80C.01, subd. 4(3) (1992).

The Banburys argue that the district court erred in finding there was no franchise fee. The Banburys claim that the $4,000 minimum purchase necessary to earn overrides was an indirect franchise fee. Minnesota recognizes that minimum volume sales requirements may constitute disguised franchise fees if the franchisee is requested to purchase amounts or items it would otherwise not have purchased. *Ot Indus., Inc. v. Ot-tehdas Oy Santasalo–Sohlberg Ab*, 346 N.W.2d 162, 166 (Minn.App.1984). But here, there is no evidence that the initial $4,000 purchase was not an acquisition of inventory at the ordinary price. In *Ot*, we also noted that the failure to buy the minimum amount did not terminate the contract, but merely changed some of its terms. *Id.* at 167. Likewise, the failure of an Omnitrition distributor and his recruits to sell $4,000 worth of products monthly does not terminate the distributorship agreement, but merely precludes the payment of overrides. We hold that the Banburys' initial $4,000 inventory purchase was not a hidden franchise fee. Thus, the Franchise Act is inapplicable.

Yet even if the inventory purchase were a franchise fee, the Banburys would not have a cause of action under the Franchise Act. The Banburys allege a violation of Minn.Stat. § 80C.14 (1992). But when the Banburys were terminated in February 1992, the Act did not yet provide for a civil cause of action for violation of that section. Section 80C.17 did not permit civil damage actions until 1993 Minn.Laws ch. 372, § 1, subd. 1, amended that section. Accordingly, the Banburys' claim fails.

Because we find that the district court properly granted summary judgment to Omnitrition on all claims, we need not reach the venue issue raised on Omnitrition's cross-appeal.

### DECISION

The district court properly granted summary judgment for Omnitrition because (1) the parties' distributorship agreement was unambiguously terminable at will; (2) the Banburys' claim for promissory estoppel can-

not alter the clear language of their contract; (3) no genuine issues of material fact exist with regard to the Banburys' claim under the Texas Deceptive Trade Act; (4) the Minnesota Consumer Fraud Act is inapplicable because there is no nexus between the alleged fraud and the sale of merchandise; and (5) the Minnesota Franchise Act is inapplicable because Omnitrition did not require the Banburys to pay a franchise fee and, further, the statute provided no damages action for violation of Minn.Stat. § 80C.14 at the time the Banburys were terminated.

**Affirmed.**