## PAUL M. CADY AND ANOTHER v. GEORGE H. BUSH AND OTHERS.

166 N. W. (2d) 358.

March 21, 1969—No. 41234.

*Joseph Robbie* and *Peter J. Lindberg,* for appellants.

*Hall, Smith, Juster, Forsberg & Feikema, Wyman Smith,* and *Donald D. Lundrigan,* for respondents.

Heard before Knutson, C. J., and Murphy, Rogosheske, Sheran, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

This is an appeal from an order of the district court granting defendants' motion for judgment notwithstanding the verdict. The litigation grows out of the cancellation of a contract for the purchase of motel property in which plaintiffs, Paul M. Cady and his wife, Olive Cady, were the buyers. Defendants are George H. Bush and Ila W. Bush, the sellers, and their agents, Arnold E. Melling and Romie O. Johnson, doing business as Lakeland Realty Company.

Plaintiffs seek return of properties exchanged and cash payments made pursuant to the contract. The theory on which they seek to recover, as expressed in their brief, is that their "action is premised on recovery for money had and received, which is equitable in its nature and does not depend upon the written instruments of contract," and they assert that they are entitled to recover on the basis of defendants' alleged fraud which induced them to enter into the contract. The trial court agreed with defendants that there was no proof of actionable fraud which would entitle plaintiffs to equitable relief.

From the record it appears that the Cadys purchased the Staples Motel from the Bushes on April 5, 1965. The asking price for the motel was $49,000, but after negotiations the parties agreed to a purchase price of $42,000. Part of the purchase price, expressed in the contract for deed, was paid by an assignment from plaintiffs to defendants of certain interests in real estate and part by plaintiffs' assumption of a mortgage. It was agreed that the balance of the purchase price should be paid in installments of $55 a month. The agreement recited that the "within sale is of a motel and rental property which is a going business," includ-

ing certain described personal property, and contained the following provision:

"[The sellers] herein certify that the heating systems in the individual units comply with all governmental regulations and that the sewage disposal systems comply with all governmental regulations and that if, within the period of one year from the date of this contract, [the buyers] are compelled to replace or relocate or change or modify said systems by reason of their non-compliance with governmental regulations, [the sellers] will pay the costs thereof."

The Cadys went into possession of the motel on April 12, 1965, and continued to operate it until October 25 of that year. It would appear that on the latter date they abandoned the premises and thereafter defaulted in their contract payments. In due time it came to the attention of the sellers that the property was not occupied and that the plaintiffs had not been making the payments as provided in the contract. They accordingly cancelled the contract and repossessed the property.

It appears from the record that the Cadys had been acquainted with defendant Johnson, a real estate man, for a number of years. They had been in the market for income-producing property which they might operate as a business after Mr. Cady's retirement. Johnson had shown them many properties prior to their negotiations for the purchase of the Staples Motel, which began in September or October of 1964. They inspected the property on two or more occasions before deciding to buy it. The alleged fraudulent misrepresentations which they assert induced them to buy the property are stated in plaintiffs' brief in this way:

"Mr. Cady testified that on the first trip to the Staples Motel from Minneapolis, Mr. Johnson stated 'there is a school up there, they are crowded', further stating that Mr. Johnson gave him a figure of around 300 students at the school at that time and it was pretty hard to place them and said 'You won't have no trouble in placing these students'. He further stated 'I tell you it is a good paying proposition.'"

Cady also complained that defendants told him "that the basement in the motel unit was dry and the sewer was perfectly okay," and that he would "earn $10,000 or better from the motel."

We have examined the asserted false representations in the context of the record, and in the light of the well-established principle of law that a party is liable for fraud if he makes a false representation of a past or existing material fact susceptible of knowledge, knowing it to be false or asserting it as of his own knowledge without knowing whether it is true or false, with the intention of inducing the person to whom it is made to act in reliance upon it or under such circumstances that such person is justified in so acting and is thereby deceived and induced to so act to his damage. Davis v. Re-Trac Mfg. Corp. 276 Minn. 116, 149 N. W. (2d) 37; 8A Dunnell, Dig. (3 ed.) § 3818; Prosser, Torts (3 ed.) p. 700.

The evidence bearing upon the issue of fraud is too tenuous and equivocal to justify serious discussion. The purchasers had full opportunity to inspect and investigate the purchase, and it is clear from the record that the representations about which they complain were made to them prior to the purchase and, as they related to past and existing facts, were not fraudulent or misleading. In his memorandum, the trial court said:

"This action was tried not on rescission, but on money had and received, and there is no evidence of any false representations made about the value of the property. Plaintiffs' only claim seems to be that they were promised that they could have as many students as they wished.

"In any event, the evidence indicates to the court that as far as income is concerned the plaintiffs in operating the motel did receive the approximate amount of income that the defendants stated they would receive. There is no evidence of any kind that the defendants were enriched unconscionably at plaintiffs' expense.

"This is clearly a case in which the plaintiffs found that they believed they had made a bad deal. They did not attempt to rescind the contract, but on the other hand merely walked away from the investment permitting the defendants Bush to commence and complete cancellation proceedings and take the property back.

"Certainly the defendants Arnold E. Melling, Romie O. Johnson and Lakeland Realty Company did not become unjustly enriched by the transaction.

"So far as the defendants Bush are concerned there is no evidence as to the value of the property when it was taken back and, therefore, it is assumed by the Court that the transaction was fair and that there was no fraud of any kind."

■   Plaintiffs' most serious complaint is that there was a loss of business because the motel was not approved by the Staples Area Vocational Technical School as a residence for students during the school year beginning in the fall of 1965. There is nothing in the record which would indicate that defendants were aware of any future change in policy by the school authorities. The fact is that when Cady took possession of the premises there were 10 or 11 students residing there, and they continued to do so during the remainder of the school year. The only inference from the record as to representations by defendants with reference to student patrons is that motel rooms had been rented to them in the past and that students would be expected to continue as tenants in the future. There is no evidence in the record that plaintiffs contacted the school authorities for the purpose of making the establishment available for the use of students during the coming year or complying with any requirements which might qualify the motel as an approved residence. On the contrary, the record would indicate that in the beginning of the 1965 school year plaintiffs effectively discouraged student tenants by raising their rates for students and providing for accommodations for six students in quarters previously occupied by four.

The law is well settled that a respresentation of expectation as to future acts or events is not a sufficient ground for the charge of fraud merely because the represented act or event did not take place. Such representations are not treated as assertions of existing facts and amount to nothing more than conjectures of future events. Bigelow v. Barnes, 121 Minn. 148, 140 N. W. 1032, 45 L. R. A. (N. S.) 203; Bakke v. Keller, 220 Minn. 383, 19 N. W. (2d) 803. To amount to actionable fraud, a representation must be material as to a past or existing fact and not to a future event. See, 8A Dunnell, Dig. (3 ed.) § 3827, note 45.

We do not think that the holding in Gable v. Niles Holding Co. 209 Minn. 445, 296 N. W. 525, cited by plaintiffs as directly analogous, sup-

ports their contentions. In that case, the plaintiff purchaser was a widow with no business training or experience. The controlling factors in that decision were actual disparity of intelligence and experience between the parties and actual fraudulent misstatements with reliance upon them.

■ Plaintiffs' claim for equitable relief arises from the stark fact that they are left with nothing in return for the approximately $21,000 with which they have parted. They ask return of the consideration on the theory of unjust enrichment, which theory "is founded on the principle that no one ought unjustly to enrich himself at the expense of another, and the gist of the action is that the defendant has received money which in equity and good conscience should have been paid to the plaintiff, and under such circumstances that he ought, by the ties of natural justice, to pay over." Heywood v. Northern Assur. Co. 133 Minn. 360, 363, 158 N. W. 632, 633; Todd v. Bettingen, 109 Minn. 493, 124 N. W. 443. The theory of unjust enrichment or money had and received has salutary and beneficial uses and has been invoked in support of claims based upon failure of consideration, fraud, mistake, and in other situations where it would be morally wrong for one party to enrich himself at the expense of another. The innumerable authorities where this principle has been used or rejected are fully gathered in 12 Dunnell, Dig. (3 ed.) §§ 6128, 6129.

But it must be kept in mind that the principle of unjust enrichment should not be invoked merely because a party has made a bad bargain. We are satisfied from the record that in this transaction there was no mistake or actionable fraud. As the trial court observed, plaintiffs "walked away" from the motel and abandoned the interest they had acquired. Under the circumstances defendants did no more than exercise rights which were granted to them under the plain provisions of their written agreement. Courts are not warranted in interfering with the contract rights of parties as evidenced by their writings which purport to express their full agreement. Nor is it within the province of equity to rewrite or abrogate contracts to protect parties from consequences which are attendant upon their voluntary abandonment of a contract, the consequences of which abandonment were reasonably foreseeable when the contractual obligations were assumed. Liggett v. Koivunen, 227 Minn.

114, 34 N. W. (2d) 345; 6 Dunnell, Dig. (3 ed.) § 3142; 8A Dunnell, Dig. (3 ed.) § 3833; 27 Am. Jur. (2d) Equity, §§ 25, 71.

Affirmed.