# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 12-4049

———————————————

Loftness Specialized Farm Equipment, Inc.

*Plaintiff - Appellee*

v.

Terry Twiestmeyer; Steven Hood; Twiestmeyer & Associates, Inc.

*Defendants - Appellants*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: October 23, 2013
Filed: February 11, 2014

——————————

Before GRUENDER, BEAM, and SHEPHERD, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

Loftness Specialized Farm Equipment, Inc. ("Loftness") brought this declaratory judgment action against Terry Twiestmeyer, Steven Hood, and Twiestmeyer & Associates, Inc. ("T&A"). Twiestmeyer, Hood, and T&A then asserted counterclaims against Loftness for, as relevant here, unjust enrichment and breach of two contracts. The district court granted Loftness's motion to dismiss the

unjust enrichment counterclaim. The district court then granted Loftness's motion for summary judgment on the breach of contract counterclaims and entered judgment for Loftness on its claim for declaratory judgment. We vacate and remand in part and affirm in part.

## I. Background

Loftness manufactures and sells farming equipment and has its principal place of business in Minnesota. Twiestmeyer and his wife own T&A, which markets and sells grain bagging equipment on behalf of Loftness. Hood's company, Hood & Company, Inc., serves as a sales representative for Loftness.

In 2007, Twiestmeyer and Hood approached Loftness with an idea for a new line of grain bag loaders and unloaders for Loftness to manufacture and sell. At that time, Twiestmeyer and Hood were selling grain bagging equipment that was manufactured in Argentina. This sales experience provided them with knowledge about the market for grain bagging equipment and insight into possible improvements to the Argentinian-made equipment. Twiestmeyer and Hood met with representatives of Loftness on May 15, 2007 to pitch this new product line. Prior to this meeting, Loftness did not manufacture grain bagging equipment and was not considering doing so. Before discussing Twiestmeyer and Hood's proposal, T&A and Loftness signed a non-disclosure agreement ("NDA"). Neither Twiestmeyer nor Hood are identified as parties to the NDA. Pursuant to the NDA, Loftness agreed it would "keep in confidence all Confidential Information" and would "not directly or indirectly disclose to any third party or use for its own benefit, or use for any purpose other than the Project, any Confidential Information it receives from [T&A]." Loftness further agreed not to use T&A's "confidential information in any way that could be construed as being competitive of [T&A's] business for a period of twenty (20) years after the effective date of this Agreement." The NDA defined "Confidential Information" as

-2-

"[s]uch information that [T&A] considers to be proprietary and/or confidential" and provided a non-exhaustive list of types of such information.

At the parties' initial meeting in May 2007, Twiestmeyer and Hood testified that they informed Loftness about the market for grain bagging equipment, the need for such equipment in the United States, their suggested improvements to the Argentinian-made equipment, and the timing for bringing such a product line to market. After this meeting, representatives of Loftness traveled to Arkansas and Nebraska to examine the Argentinian-made equipment. Loftness thereafter concluded that "[i]t appeared that there was [an] opportunity to sell this equipment. There w[ere] already Argentinean made machines being sold in North America, and it was obvious that there were shortfalls in those machines that [Loftness] could fix." Loftness then developed a prototype of a grain bag unloader, which according to Twiestmeyer and Hood, incorporated several of their ideas, including the addition of two additional clutches to the Argentinian grain bag unloader. Loftness also developed a grain bag loader. Loftness began manufacturing and selling this equipment in 2008.

Following the May 2007 meeting, the parties discussed how Twiestmeyer and Hood would be compensated for their role in developing Loftness's new product line. These discussions culminated with an agreement signed on May 21, 2008 (the "May 2008 Agreement") in which Loftness agreed to pay Twiestmeyer and Hood "a two percent (2%) override of the dealer net price on all grain bagging equipment and related products, except grain bags, sold by LOFTNESS during the term of the Agreement" (the "two-percent override payments"). The May 2008 Agreement specified a duration of two years.

Less than three weeks before the May 2008 Agreement was to expire, on May 3, 2010, representatives of Loftness called Twiestmeyer and Hood to inform them of a deal that Loftness had reached with Brandt Agricultural Products Limited (the

"Brandt deal"). Pursuant to the Brandt deal, Loftness would manufacture grain bag loaders and unloaders for Brandt to sell as Brandt equipment, and Brandt would manufacture grain bag augers for Loftness to sell. Twiestmeyer and Hood testified that Loftness's representatives assured them that the Brandt deal would be a "good deal for all of us" and a "win-win" and that Loftness would continue making the two-percent override payments. Twiestmeyer and Hood testified that their understanding from their telephone conversations with Loftness's representatives was that the duration of the May 2008 Agreement had been extended to coincide with the remaining term of the NDA. At that time, approximately three years had passed since the NDA was signed, leaving a duration of approximately seventeen years. However, Twiestmeyer and Hood admit that they did not discuss explicitly the duration of any extension of the May 2008 Agreement with Loftness's representatives. Twiestmeyer testified that Loftness's representatives did not say "We are extending the May 2008 [A]greement" or anything of that nature.

Loftness continued making the two-percent override payments to Twiestmeyer and Hood until early 2011, even though the May 2008 Agreement's initial two-year term had expired in May 2010. In January 2011, a representative of Loftness advised Twiestmeyer and Hood of Loftness's intention to terminate the two-percent override payments. At approximately the same time, Twiestmeyer and Hood presented Loftness with a revised agreement providing for a continuation of the two-percent override payments. Loftness did not sign this revised agreement.

Loftness then brought this action, seeking a declaratory judgment that it has fulfilled its duties under the NDA and the May 2008 Agreement. Twiestmeyer, Hood, and T&A then asserted counterclaims against Loftness for unjust enrichment, breach of the NDA, and breach of the May 2008 Agreement. Loftness moved to dismiss these counterclaims for failure to state a claim, which the district court granted with respect to the unjust enrichment counterclaim. Loftness subsequently moved for summary judgment on the counterclaims for breach of the NDA and breach

of the May 2008 Agreement.  The district court granted Loftness's motion for summary judgment and entered judgment for Loftness on its claim for declaratory judgment.  Twiestmeyer, Hood, and T&A timely appealed.

## II.  Discussion

### A.  Breach of the Non-Disclosure Agreement (NDA)

Twiestmeyer, Hood, and T&A first appeal the district court's grant of Loftness's motion for summary judgment on the counterclaim for breach of the NDA. They argue that Loftness breached the non-compete clause of the NDA by entering into the Brandt deal and by sharing information with Brandt without continuing to make the two-percent override payments.  We review *de novo* a district court's grant of summary judgment, *M & I Marshall & Ilsley Bank v. Sunrise Farm Dev., LLC*, 737 F.3d 1198, 1199 (8th Cir. 2013), affirming if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The non-moving party receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'"  *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010)).

In granting summary judgment to Loftness, the district court applied a three-part test for the tort of misappropriation of trade secrets and confidential information. The district court derived this test from *Cherne Industrial, Inc. v. Grounds & Associates, Inc.*, 278 N.W.2d 81, 89-90 (Minn. 1979), which states the common law standard for the tort of misappropriation of trade secrets and confidential information, and from *Strategic Directions Group, Inc. v. Bristol-Myers Squibb Co.*, 293 F.3d 1062, 1064 (8th Cir. 2002), which recites the test for claims brought under the

Minnesota Uniform Trade Secrets Act ("MUTSA").[1] The district court determined that Twiestmeyer, Hood, and T&A's claim failed the third part of this test because they made no effort to keep their ideas and information confidential.

Twiestmeyer, Hood, and T&A's claim, however, is premised upon Loftness's alleged breach of the non-compete provision of the NDA, not the tort of misappropriation of trade secrets and confidential information. Minnesota law distinguishes between a claim based upon the tort of misappropriation of trade secrets and confidential information and one based upon the breach of a non-compete provision in a contract. In *Cherne*, for example, the plaintiff brought a claim for misappropriation of trade secrets and confidential information and a claim for breach of a covenant not to compete. 278 N.W.2d at 88-91. The *Cherne* court analyzed the two claims separately and decided the latter claim based upon the language of the relevant contract. *Id.* Furthermore, in *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890 (Minn. 1983), the Minnesota Supreme Court distinguished between information protected by *Cherne*'s common law standard and by the MUTSA, on the one hand, and information protected by a non-compete clause in a contract, on the other hand. *Id.* at 901. The *Electro-Craft* court explained that using a non-compete clause to protect information requires "a single act" by the party seeking to protect the information, *id.*—presumably the act of entering the contract. The tort of misappropriation of trade secrets and confidential information, by contrast, requires "a continuing course of conduct" by the party seeking to protect the information; that is, the party must make reasonable efforts to maintain the secrecy of the information. *Id.*

Instead of applying the test for the tort of misappropriation of trade secrets and confidential information, the district court should have interpreted and applied the

---

[1] On appeal, the parties do not challenge the district court's decision to apply Minnesota law.

terms of the NDA. *See Cherne Indus.*, 278 N.W.2d at 88-89. Although the district court stated that its decision was made "pursuant to" the NDA, the district court failed to mention, much less analyze, the relevant provisions of the NDA, especially Loftness's agreement not to use T&A's "confidential information in any way that could be construed as being competitive of [T&A's] business" and the NDA's definition of "Confidential Information" as "[s]uch information that [T&A] considers to be proprietary and/or confidential."

Loftness urges us to affirm the district court's judgment on the alternative basis that its actions with respect to the Brandt deal did not violate the non-compete clause of the NDA. Although we *may* affirm the district court's judgment on any basis supported by the record, we are not required to do so. *Schweiss v. Chrysler Motor Corp.*, 922 F.2d 473, 476 (8th Cir. 1990). When it would be beneficial for the district court to consider an alternative argument in the first instance, we may remand the matter to the district court. *See id.* (remanding to the district court to consider an alternative basis for affirmance because "we would benefit from having the District Court decide the issue . . . before we address it"); *Lafarge N. Am., Inc. v. Discovery Group, LLC*, 574 F.3d 973, 986 n.9 (8th Cir. 2009) (declining to affirm the grant of summary judgment on alternative bases because "we believe it would be beneficial for the district court to address these issues in the first instance"); *Williams v. Target Stores*, 479 F. App'x 26, 28 (8th Cir. 2012) (unpublished) (declining to consider an issue, even though the parties argued it, because it "was not decided below" and "is a matter best left to the district court to consider in the first instance upon remand"). Given the basis for the district court's decision, the parties did not comprehensively brief or argue whether Loftness's actions in connection with the Brandt deal constituted a breach of the non-compete provision of the NDA. Because it would be beneficial for the district court to consider this issue in the first instance, we remand this counterclaim for further proceedings.

-7-

## B. Breach of the May 2008 Agreement

Twiestmeyer, Hood, and T&A also appeal the district court's grant of Loftness's motion for summary judgment on their counterclaim for breach of the May 2008 Agreement. The district court dismissed this counterclaim because the extension of the May 2008 Agreement as understood by Twiestmeyer and Hood was unenforceable under the statute of frauds, because there was no meeting of the minds on the purported extension, and because Loftness's conduct created an implied-in-fact contract that Loftness could and did terminate at will with reasonable notice.

We need not reach whether there is a genuine issue of material fact on the meeting-of-the-minds issue because the oral extension of the May 2008 Agreement as understood by Twiestmeyer and Hood is unenforceable under the statute of frauds. *See Bolander v. Bolander*, 703 N.W.2d 529, 538, 547 (Minn. Ct. App. 2005) (analyzing oral extension of agreement under statute of frauds). The Minnesota statute of frauds states, in relevant part, that an agreement "that by its terms is not to be performed within one year from the making thereof" is unenforceable "unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party charged therewith." Minn. Stat. § 513.01. Thus, if the parties' agreement is not "in writing," then the agreement is enforceable only if it is capable of full performance within one year. *See id.*; *Eklund v. Vincent Brass & Aluminum Co.*, 351 N.W.2d 371, 375-76 (Minn. Ct. App. 1984), *overruled on other grounds by Hunt v. IBM Mid Am. Emps. Fed. Credit Union*, 384 N.W.2d 853, 858-59 (Minn. 1986). It does not matter whether full performance within one year is likely so long as it is possible. *See id.*[2]

---

[2]Twiestmeyer, Hood, and T&A argue for the first time on appeal that equitable estoppel prevents application of the statute of frauds. We have discretion to consider an argument not raised before the district court when "the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case" or where injustice might otherwise result. *Universal Title Ins. Co. v. United*

Twiestmeyer, Hood, and T&A first argue that the NDA qualifies as a "writing" that extends the two-year duration of the May 2008 Agreement to a total term of twenty years. For this proposition, they rely on the general rule that "where contracts relating to the same transaction are put into several instruments they will be read together and each will be construed with reference to the other." *Anchor Cas. Co. v. Bird Island Produce, Inc.*, 82 N.W.2d 48, 54 (Minn. 1957). This rule of construction does not apply here. To begin with, the NDA predates the May 2008 Agreement by more than one year. *See Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 313 (Minn. 2003) (declining to apply the rule from *Anchor Casualty*, in part, because the relevant agreements "were entered into successively and not contemporaneously"). Moreover, the NDA and the May 2008 Agreement concern different aspects of different parties' relationships,[3] a conclusion that the NDA itself confirms by providing that "[i]f the parties desire to pursue business opportunities, the parties will execute a *separate* written agreement to govern such business relationship." (emphasis added). *See Anchor Cas. Co.*, 82 N.W.2d at 54 (declining to read agreements together because "the parties to these instruments are not the same, and the plain provisions of the [instruments] are incompatible"). In addition, Twiestmeyer, Hood, and T&A's argument would require us to read the two-year duration out of the May 2008 Agreement simply because an earlier agreement specified a different duration. Doing so would contradict the rule that "[a] contract must be interpreted in a way that gives *all* of its provisions meaning." *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995) (emphasis

_____

*States*, 942 F.2d 1311, 1314-15 (8th Cir. 1991). We do not consider whether equitable estoppel applies here because it is not a purely legal issue and injustice would not otherwise result.

[3]Only T&A and Loftness are identified as parties to the NDA, while only Twiestmeyer, Hood, and Loftness are identified as parties to the May 2008 Agreement.

added).  For these reasons, we decline to read the NDA as a writing that extends the term of the May 2008 Agreement.

Twiestmeyer, Hood, and T&A next assert that the parties orally extended the May 2008 Agreement during their phone conversations on May 3, 2010. Twiestmeyer and Hood admit that they never specifically discussed the duration of an extension of the May 2008 Agreement with Loftness's representatives. Twiestmeyer, moreover, concedes that Loftness did not say that it was extending the May 2008 Agreement or anything of that nature.  Nevertheless, based on the assurances that Loftness would continue making the two-percent override payments and that the Brandt deal would be a "good deal for all of us" and a "win-win," Twiestmeyer and Hood contend that they understood that the May 2008 Agreement had been orally extended for the remaining term of the NDA, or for approximately seventeen more years.  As further evidence of the parties' intent to extend the May 2008 Agreement, Twiestmeyer and Hood rely on Loftness's continued payment of the two-percent override after the expiration of the May 2008 Agreement's two-year term.

Even if we accept Twiestmeyer, Hood, and T&A's position that the parties orally extended the May 2008 Agreement for seventeen years, such an extension is unenforceable under the statute of frauds because it cannot be fully performed within one year. *Roaderick v. Lull Eng'g Co., Inc.*, 208 N.W.2d 761, 763-64 (Minn. 1973) (holding that an oral agreement providing for a minimum of two years' employment is unenforceable under the statute of frauds); *Eklund*, 351 N.W.2d at 375 ("Even if the employee [in *Roaderick*] died within a year, the contract would not be performed in full.").  Twiestmeyer, Hood, and T&A disagree, arguing that Loftness could have stopped manufacturing and selling grain bagging equipment at any time, including within one year.  If Loftness did so, they assert, Loftness's obligations under the seventeen-year extension would cease.  Halting the production and sale of grain bagging equipment, however, does not equate to full performance of the alleged

seventeen-year extension. Even though Loftness would no longer be making the two-percent override payments under this scenario, the seventeen-year extension would remain in effect. For example, if Loftness decided to start selling grain bagging equipment again during the seventeen-year period, then Loftness again would be obligated to make the two-percent override payments. Because full performance of the purported seventeen-year extension within one year is impossible, the extension is unenforceable under the statute of frauds. Thus, no action can be maintained on the alleged oral agreement. *See Roaderick*, 208 N.W.2d at 763.

The district court also found that Loftness's continued payment of the two-percent override after the expiration of the May 2008 Agreement's two-year term created an implied-in-fact contract that Loftness could and did terminate at will with reasonable notice. Citing the rule that a contract is not terminable at will if a duration can be fairly implied, *e.g.*, 17B C.J.S. *Contracts* § 603 (2013), Twiestmeyer, Hood, and T&A urge that summary judgment was inappropriate on this issue. We disagree. "The general rule is that a contract having no definite duration *expressed or which may be implied* is terminable by either party at will upon reasonable notice to the other." *Benson v. Co-op. Creamery Ass'n v. First Dist. Ass'n*, 151 N.W.2d 422, 426 (Minn. 1967) (emphasis added); *see also W.K.T. Distrib. Co. v. Sharp Elec. Corp.*, 746 F.2d 1333, 1335 (8th Cir. 1984) (same and interpreting Minnesota law). There was no express duration for the extension of the May 2008 Agreement, as Twiestmeyer and Hood concede that the parties did not discuss a duration, and as discussed above, the NDA does not provide an express duration. Moreover, the implied duration that Twiestmeyer and Hood understood from their discussions with Loftness's representatives is, for the reasons discussed above, unenforceable under the statute of frauds. Accordingly, there was no duration that was expressed or that can be implied, meaning that Loftness could terminate the two-percent override payments at will with reasonable notice. *See id.*; *Benson*, 151 N.W.2d at 426. The district court determined that Loftness gave reasonable notice before terminating the two-percent override payments, a determination that Twiestmeyer, Hood, and T&A

-11-

do not dispute. Accordingly, there is no genuine issue of material fact as to whether Loftness breached the May 2008 Agreement or any extension thereof. We therefore affirm the grant of summary judgment on this counterclaim.

## C. Unjust Enrichment

Twiestmeyer, Hood, and T&A also appeal the district court's dismissal of their unjust enrichment counterclaim. We review *de novo* a district court's grant of a motion to dismiss, construing all reasonable inferences in favor of the non-moving party. *Retro Television Network, Inc. v. Luken Comm'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The district court concluded that Twiestmeyer, Hood, and T&A were not entitled to plead unjust enrichment in the alternative because the parties' relationships were governed by "various contracts." So long as an adequate legal remedy exists, equitable remedies like unjust enrichment are not available. *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996). "[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract." *U.S. Fire Ins. Co. v. Minn. St. Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981). To state a claim for unjust enrichment, "the plaintiff must plead more than that one party benefit[ted] from the efforts or obligations of others, but instead must allege that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 554 (8th Cir. 2008) (alteration in original) (quoting *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981)) (internal quotation marks omitted). "Thus, unjust enrichment does not occur when a defendant is 'enriched by what he is entitled to under a contract or otherwise.'" *Schaaf*, 517 F.3d at 554 (quoting 1 Dan

B. Dobbs, *Law of Remedies* § 4.1(2), at 558 (2d ed. 1993)). Moreover, "unjust enrichment should not be invoked merely because a party has made a bad bargain." *Cady v. Bush*, 166 N.W.2d 358, 362 (Minn. 1969).

The counterclaim for unjust enrichment incorporates all of the allegations made in support of the counterclaims for breach of the NDA and for breach of the May 2008 Agreement. The unjust enrichment counterclaim then alleges, without elaboration, that Loftness breached its "common law duties" and received or will receive "monies to which it is not entitled," "cannot equitably keep," and "for which it should be held accountable." Thus, the core of Twiestmeyer, Hood, and T&A's unjust enrichment counterclaim appears to be that Loftness has been unjustly enriched by its continued use of their ideas and information without compensating them. To the extent that Twiestmeyer, Hood, and T&A complain about Loftness's use of their ideas and information, this issue is governed by the non-compete clause and the confidentiality provisions of the NDA. And to the extent that they complain about Loftness's failure to make the two-percent override payments, this issue is governed by the May 2008 Agreement. This dispute, then, is governed by the NDA and the May 2008 Agreement, making unjust enrichment an unavailable remedy. *See U.S. Fire Ins. Co.*, 307 N.W.2d at 497.

Twiestmeyer, Hood, and T&A disagree, arguing that they are left without an adequate legal remedy if, as we determine above, Loftness did not breach the May 2008 Agreement. In *Cady v. Bush*, the Minnesota Supreme Court rejected an analogous argument by concluding that unjust enrichment was an unavailable remedy even though the plaintiff could not sue successfully for breach of contract. 166 N.W.2d at 362 (explaining that the defendant "did no more than exercise rights which were granted to them under the plain provisions of their written agreement"). This was so because "unjust enrichment should not be invoked merely because a party has made a bad bargain." *Id.* Here, Twiestmeyer and Hood proposed to Loftness that the May 2008 Agreement have a two-year term—a fact pled in support of their counterclaim. Having struck this deal, Twiestmeyer, Hood, and T&A cannot rewrite

-13-

it via unjust enrichment. *See id.* ("Nor is it within the province of equity to rewrite or abrogate contracts . . . ."). Because the rights and the obligations of the parties were governed by the NDA and the May 2008 Agreement, we affirm the dismissal of this counterclaim. *See U.S. Fire Ins. Co.*, 307 N.W.2d at 497.

## III. Conclusion

For the reasons set forth above, we vacate the district court's order granting summary judgment on the counterclaim for breach of the NDA and remand for further proceedings consistent with this opinion, affirm the grant of summary judgment on the counterclaim for breach of the May 2008 Agreement, and affirm the dismissal of the unjust enrichment counterclaim. Due to our resolution of the counterclaim for breach of the NDA, we vacate the district court's judgment for Loftness on its claim for declaratory judgment.

_____