# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1059
_____

Kirstie Wade, both individually and on behalf of her minor children, Abriana
Chavez, Jayden Chavez, and Oscar Chavez, Jr.

*Plaintiff - Appellant*

v.

Pottawattamie County, a Political Subdivision of the State of Iowa

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: December 13, 2023
Filed: May 7, 2024

_____

Before ERICKSON, MELLOY, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

A high-speed police chase started in Iowa and ended with a collision in
Nebraska. An injured third party sued, but a federal district court in Nebraska
dismissed because it thought it lacked personal jurisdiction over an Iowa county.
We reverse.

## I.

The unfortunate chain of events began when a deputy from Pottawattamie County, Iowa, spotted a car going too fast. The car continued to speed up, even as the deputy attempted a traffic stop. Over the course of ten minutes, the chase went from a rural highway near Council Bluffs to a bridge over the Missouri River into Omaha. Along the way, the speeding car lost its driver's side tires while traveling over 100 miles per hour.

As the chase went on, other police cars joined. They turned off their lights and sirens as they approached the border, but they did not stop. After crossing into Nebraska, the deputy continued to drive faster than the flow of traffic and changed lanes to keep the fleeing car in sight. He provided updates about the pursuit over the radio.

Crossing an overpass near the first exit in Nebraska were Kirstie Wade and her children. A car was barreling right toward them moving the wrong way on an entrance ramp, so Wade could not avoid a head-on collision. The deputy and other Iowa officers stayed to help Wade and her children after the crash. Meanwhile, Nebraska law enforcement dealt with the driver of the fleeing car.

Wade sued Pottawattamie County for damages in Nebraska federal district court, which dismissed for lack of personal jurisdiction. The question for us is whether it should have.

## II.

For a federal district court sitting in diversity, personal jurisdiction over a party depends on both a forum state's long-arm statute and general due-process principles. *See Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979

(8th Cir. 2015); *see also* Fed. R. Civ. P. 4(k)(1)(A). Nebraska's long-arm statute authorizes "the exercise of personal jurisdiction consistent with the Constitution of the United States," so both requirements collapse into one: whether the exercise of personal jurisdiction over Pottawattamie County is "consistent with" due process. Neb. Rev. Stat. § 25-536(2); *see Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693 (8th Cir. 2003).

There are two ways it could be. The first is if Pottawattamie County were "essentially at home" in Nebraska, a concept known as "general jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). When available, it provides personal jurisdiction to courts within the state "to hear any and all claims against" a party, but only when there are "continuous and systematic" contacts. *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). As a political subdivision of neighboring Iowa, Pottawattamie County's contacts with Nebraska are closer to "random [and] fortuitous," nowhere near continuous and systematic. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). They are, in other words, not extensive enough for general jurisdiction.

A second possibility is specific jurisdiction. Its focus is narrower: it covers only those claims "aris[ing] out of or relat[ing] to [a party's] contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (citation omitted); *see also Walden*, 571 U.S. at 284 (explaining that "the defendant's suit-related conduct must create a substantial connection with the forum State"). And so is the standard, which requires a defendant to have "'purposefully availed' itself of the 'benefits and protections' of the forum state." *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co.*, 646 F.3d 589, 594 (8th Cir. 2011) (quoting *Burger King*, 471 U.S. at 482). As before, the contacts must be more than random and fortuitous, but they need not rise to the level of continuous and systematic. The threshold is somewhere in between. Indeed, "even a single act" can be enough if "it creates a substantial connection with the forum" state and the litigation "arise[s] out

of or relate[s] to" it. *Burger King*, 471 U.S. at 472, 475 n.18 (citations omitted); *see Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020) (listing five relevant factors but focusing on the nature of the contacts and how they relate to the claims).

Purposeful availment exists here. As the deputies approached the border, they faced a choice: end the chase or continue across the border. They chose to continue, even if they turned off their lights and sirens and slowed down as they crossed the bridge. *See Burger King*, 471 U.S. at 476 (observing that "territorial presence" can support personal jurisdiction); *cf. Hess v. Pawloski*, 274 U.S. 352, 356 (1927) (holding that due process allows states to exercise jurisdiction over nonresident drivers involved in "accidents or collisions"). And then, once they entered Nebraska, the lead deputy tried to stay close to the fleeing car by changing lanes and driving faster than the flow of traffic. They had to "reasonably anticipate" that if something went wrong, they could be "haled into court" in Nebraska. *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

As we now know, something did go wrong: the car the deputies had been chasing crashed into Wade's car, injuring her and her children. She has sued in Nebraska, the site of the crash, to determine whether those contacts were the cause.[1] *See Hess*, 274 U.S. at 356 (explaining that a driver "who use[s] [a state's] highways" can be "require[d] . . . to answer for his conduct in the State"). Specific jurisdiction exists for exactly this purpose, when "the defendant, the forum, and the litigation" are all related. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984) (citation omitted).

---

[1]When the district court dismissed for lack of personal jurisdiction, it did not address whether Wade's complaint stated a claim under Nebraska's strict-municipal-liability statute, *see* Neb. Rev. Stat. § 13-911(1). On remand, "the district court [can] consider [that] argument," as well as the relationship between the statute and her negligence claim, "in the first instance." *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 851 (8th Cir. 2014).

It makes no difference that the deputies entered Nebraska for a good reason. They were in the middle of a high-speed chase with a car driving dangerously and had nowhere to turn around. Still, they knew exactly where they were, and radio chatter confirmed that they were undeterred by the fact that the border was approaching. Once they made the conscious decision to cross and continue their pursuit, they purposefully availed themselves of the "benefits and protections of [Nebraska's] laws." *Stanton*, 340 F.3d at 693 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

## III.

We accordingly reverse and remand for further proceedings.

_____