# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-3477
_____

Daniel Graff

*Plaintiff - Appellant*

v.

Brighthouse Life Insurance Company, also known as Brighthouse Financial Life
Insurance Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: May 9, 2024
Filed: August 1, 2024
_____

Before COLLOTON, Chief Judge, BENTON and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Daniel Graff sued Brighthouse Life Insurance Company in Minnesota state
court, alleging that the policy he purchased from Brighthouse failed to use language
that was readable and understandable to a person of average intelligence, in violation
of Minn. Stat. § 72C.06 and the implied covenant of good faith and fair dealing.
Graff also raised an unjust enrichment claim for the remaining premiums owed

through the Policy's maturity date. Brighthouse removed the case to federal court based on diversity-of-citizenship jurisdiction, and the district court[1] subsequently granted its motion to dismiss the complaint for failing to state a claim. Having jurisdiction under 28 U.S.C. § 1291, we affirm the dismissal.

I.

In 2004, an agent for Brighthouse solicited Graff to purchase a Flexible Premium Adjustable Life Insurance Policy for his 78-year-old father, Robert, under which Graff was named the beneficiary of an $800,000 death benefit. Robert is now 97, and Graff has remitted premiums totaling more than $874,000. If Robert lives to his 100th birthday—the date on which the Policy matures—then Graff will have been required to remit an additional $755,550 in premiums. In other words, Graff may ultimately contribute more than $1,600,000 to a policy that will, at most, pay out $800,000. Alternatively, Graff may elect to surrender the Policy before the maturity date and receive its cash value, which, as of 2022, was approximately $1,800.

Faced with these unfavorable prospects, Graff sued Brighthouse, alleging that the Policy violated the Minnesota Readability of Insurance Policies Act, Minn. Stat. § 72C.01 et seq., (the RIPA or the Act) and the implied covenant of good faith and fair dealing by explaining the calculation of premiums and cash value in a manner that was not understandable to Graff or similarly situated persons of average intelligence. Graff also alleged that Brighthouse would be unjustly enriched by receiving the remaining premiums due on the Policy through the maturity date. Brighthouse removed the case to federal court and moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion and dismissed the complaint with prejudice, concluding that a private cause of action was unavailable under the RIPA, that the implied-covenant claim was

[1]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota.

untimely, and that Graff was not entitled to recover under a theory of unjust enrichment because a valid contract governed the parties' relationship pursuant to which Brighthouse was legally entitled to the remaining premiums. Graff renews his three claims on appeal.

II.

Graff first asserts that the district court erred in holding that the RIPA does not create a private cause of action in favor of insureds. We review the district court's grant of Brighthouse's motion to dismiss, and its interpretation of the Act, de novo. See Palmer v. Ill. Farmers Ins. Co., 666 F.3d 1081, 1083 (8th Cir. 2012). Whether the RIPA permits a private remedy is an open question under Minnesota law; therefore, we must "predict how the state's highest court would resolve [the] issue." Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 534 (8th Cir. 2006). "When interpreting a statute to determine if it creates a cause of action," the Minnesota Supreme Court does "not ask whether the statute imposes a limitation on an otherwise unlimited claim, but instead determine[s] whether the statute actually *provides* a cause of action to a particular class of persons." Krueger v. Zeman Constr. Co., 781 N.W.2d 858, 863 (Minn. 2010). To this end, "[a] statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." Becker v. Mayo Found., 737 N.W.2d 200, 207 (Minn. 2007).

Here, the Act is devoid of language expressly creating a private cause of action to enforce the rights enumerated therein, and Graff acknowledges as much. He instead argues that a right of action is implicit because the RIPA is a consumer-protection law with the stated purpose of shielding insurance purchasers from the use of indecipherable policy language by insurers. Put differently, the Act creates a beneficial right for a class of persons for which there must be a remedy. See Ark. State Conf. NAACP v. Ark. Bd. Of Apportionment, 86 F.4th 1204, 1220 (8th Cir. 2023) (Smith, C.J., dissenting) ("The implication of a right of action is

-3-

rooted in the Blackstonian principle . . . that 'where there is a legal right, there is also a legal remedy.'" (alteration in original) (citation omitted)).

As an initial matter, Graff appears to derive many of his arguments from the multi-factor balancing test articulated in Cort v. Ash, which the Supreme Court employed to determine whether a private cause of action may be implied in the absence of express federal statutory language establishing one. 422 U.S. 66, 78 (1975). However, the Minnesota Supreme Court has never adopted the Cort test and in fact has explicitly declined to do so. Findling v. Grp. Health Plan, Inc., 998 N.W.2d 1, 21 n.19 (Minn. 2023) ("[W]e are not in any way bound by the statutory interpretation principles and methodologies used by the United States Supreme Court when we interpret Minnesota statutes.").[2] Instead, the objective of our inquiry in this case is to discern whether the legislature "implicitly intended" to afford a private party a right of action against an insurer for violating the requirements of the RIPA. See id. at 20. In doing so, we consider "the language of the statute in question and its related sections," mindful that courts are "reluctant to recognize a private cause of action where one does not clearly exist in the statute." Graphic Commc'ns Loc. 1B Health & Welfare Fund "A" v. CVS Caremark Corp., 850 N.W.2d 682, 691 (Minn. 2014).

Broadly, the purpose of the RIPA "is to provide that insurance policies and contracts be readable and understandable to a person of average intelligence, experience, and education." Minn. Stat. § 72C.02. Insurers are required to submit proposed policies to the State Commissioner of Commerce, who is charged with the exclusive duty and authority to certify that a policy complies with the Act's readability, legibility, and formatting requirements. Id. §§ 72C.06-08, 10. In making this determination, the Commissioner must consider various factors, such as

---

[2]This Court has also questioned "the continued validity of the Cort analysis," citing Justice Scalia's observation that it has been effectively overruled. Roberts v. Wamser, 883 F.2d 617, 623 n.17 (8th Cir. 1989) (citing Thompson v. Thompson, 484 U.S. 174, 189 (1988) (Scalia, J., concurring)).

"the simplicity of the sentence structure and the shortness of the sentences used"; "the extent to which references to other sections or provisions of the contract are minimized"; "the use of contrasting titles or headings for sections or similar aids"; and "the use of a more easily understandable format such as narrative or outline forms." Id. §§ 72C.06-08. Further, approval from the Commissioner is a prerequisite to the issuance, amendment, or renewal of any policy covered under the Act, and the Commissioner is forbidden from approving a proposed policy that runs afoul of any of the requirements prescribed by the legislature. Id. § 72C.10.

A plain reading of the statutory language thus reveals that the Commissioner of Commerce, not a private party, is the person responsible for enforcing the RIPA's requirements; nowhere does the Act allude to a private cause of action or otherwise contemplate that an aggrieved insured shares co-extensive enforcement powers with the Commissioner. That the legislature would charge the Commissioner with exclusive enforcement authority under the RIPA accords with the broad powers afforded to him under Minnesota's comprehensive scheme of insurance regulation. See Palmer, 666 F.3d at 1083-85 ("Minnesota has determined that its insurance market can best be regulated by the Commissioner's pursuit of fines and injunctive relief . . . ." (citation omitted)); see also Minn Stat. § 45.027 (enumerating the Commissioner's extensive enforcement powers). This Court "has long recognized the special role of the Minnesota Commissioner of Commerce" and has "declined to create a judicial avenue to enforce the state's statutes when the Minnesota legislature has not." Palmer, 666 F.3d at 1085.

In this vein, the Minnesota Supreme Court has repeatedly "refused to find a private cause of action to enforce a statutory right when the statute gives enforcement authority to a state agency," even in cases where the challenged provision contained stronger rights-creating language than that at issue here. See Findling, 998 N.W.2d at 20-21 (finding that the Minnesota Health Care Bill of Rights did not create a private cause of action where the legislature vested oversight authority in the State Commissioner of Health, whose powers functioned as an "alternative enforcement mechanism" to promote the act's "goals of protecting patient rights"); CVS

-5-

Caremark, 850 N.W.2d at 691-92 (finding that the Pharmacy Practice Act, which requires pharmacists to pass on drug-acquisition cost savings to purchasers, did not create a private cause of action in part because the legislature provided the State Board of Pharmacy with broad authority to enforce the act's requirements); Morris v. Am. Fam. Mut. Ins. Co., 386 N.W.2d 233, 235 (Minn. 1986) (finding that the Unfair Claims Practices Act did not create a private cause of action because the act "deals with administrative regulation of insurance practices by the Commissioner of Commerce and says nothing about a private person having a right to sue the insurer for a violation").

Graff resists this conclusion, asserting that a court may look only to the challenged statute when ascertaining the legislature's intent, and that a review of the RIPA shows the absence of any enforcement mechanisms, meaning that a private remedy must therefore be implied. We do not agree that we are so constrained. In Palmer, for example, this Court noted that a plaintiff's attempt to assert a private right of action under an insurance statute must "be considered in the context of Minnesota's comprehensive regulatory scheme and the historical deference Minnesota courts have accorded the Commissioner of Commerce in enforcing the law in this area." 666 F.3d at 1086. And in CVS Caremark, the Minnesota Supreme Court looked to "relevant statutes" other than the Pharmacy Practice Act to survey the extensive enforcement authority of the State Board of Pharmacy. 850 N.W.2d at 691.

We also disagree with Graff's characterization of the Act as lacking an enforcement mechanism, as its provisions explicitly condition the issuance, amendment, or renewal of any insurance policy on the Commissioner's approval; if a proposed Policy does not comply with the RIPA's requirements, then the Commissioner is required by law to withhold his approval. Thus, contrary to Graff's assertion, enforcement authority falls squarely upon the Commissioner, who has previously exercised his power to levy fines against insurers whose policies violated the Act's readability and formatting standards. See Certificate of Auth. of Liberty Ins. Corp., NAIC No. 42404, 2020 WL 1952583 (Minn. Dep't Comm. Mar. 6, 2020);

-6-

Certificate of Auth. of Allied Prop. & Cas. Ins. Co., NAIC No. 42579, 2018 WL 9787033 (Minn. Dep't Comm. Aug. 29, 2018).[3]

In sum, the Minnesota legislature did not intend to alter the insurance regulatory landscape with the enactment of the RIPA so as to permit a private cause of action. To hold otherwise "would require us to add words to the statute that the Legislature did not supply" and create "'additional rights' beyond those expressly enumerated." CVS Caremark, 850 N.W.2d at 691 (citation omitted); see also Becker, 737 N.W.2d at 209 ("The obvious conclusion must usually be that when the legislators said nothing about it, they either did not have the civil suit in mind at all, or deliberately omitted to provide for it." (citation omitted)). The Commissioner, through his authority to ensure compliance with the Act's requirements, functions as the "alternative enforcement mechanism" to a private lawsuit contemplated in Findling. 998 N.W.2d at 20. Although Graff maintains that the discretion granted to the Commissioner has resulted in an enforcement scheme insufficient to effectuate the RIPA's purpose, we find no evidence in the record that the Act's administrative remedies are inadequate. See Palmer, 666 F.3d at 1086. Therefore, we affirm the district court's dismissal of this claim.

### III.

Graff next asserts that the district court erred in finding that his common-law claim for breach of the implied covenant of good faith and fair dealing based on Brighthouse's violation of the RIPA was untimely. We do not reach this question, as our determination that the RIPA provides no private remedy is fatal to Graff's claim. That is, a plaintiff may not maintain a common-law claim premised on a violation of a statute for which there is no private cause of action. See Palmer, 666 F.3d at 1085. In Morris, the Minnesota Supreme Court explained that "when a

---

[3]It appears from these decisions that the Commissioner has frequently exercised his authority to enforce the RIPA and other insurance regulations by conducting post-issuance enforcement actions.

statute creates a right which did not exist at common law and provides administrative remedies, those remedies are exclusive." 386 N.W.2d at 237 n.8. Courts have subsequently rejected attempts to use the alleged violation of an administrative statute as an element of a common-law cause of action. Palmer, 666 F.3d at 1085. There are many such examples:

> The court [of appeals has] refused to recognize a conversion claim based on the Minnesota Fair Labor Standards Act, a tortious interference with contract claim predicated on the Unfair Claims Practices Act, and an unjust enrichment cause of action challenging utility rates and brought outside the administrative procedure established by statute.
>
> In a case of special interest here, the court of appeals has expressly rejected a breach of contract claim based on the violation of an insurance regulation.

Id. (citing Olson v. Moorhead Country Club, 568 N.W.2d 871, 873-74 (Minn. Ct. App. 1997); Glass Serv. Co. v. State Farm Mut. Auto Ins. Co., 530 N.W.2d 867, 872 (Minn. Ct. App. 1995); H.J. Inc. v. Nw. Bell Corp., 420 N.W.2d 673, 676 (Minn. Ct. App. 1988); Schermer v. State Farm Fire & Cas. Co., 702 N.W.2d 898, 905 (Minn. Ct. App. 2005)).

The reasoning of Morris and its progeny is instructive: Graff's claim is grounded exclusively in the readability provision of the RIPA, see Minn. Stat. §72C.06, as his complaint alleges that Brighthouse's failure to use "easily readable and understandable language in the Policy" amounts to a violation of the implied covenant of good faith and fair dealing. On its face, then, Graff's claim "attempt[s] to circumvent Minnesota's administrative remedies and" once more "create a private right of action when the legislature has not." Palmer, 666 F.3d at 1086. Therefore, we affirm the district court's dismissal of this claim, albeit on different grounds. See Moffit v. State Farm Mut. Auto. Ins. Co., 11 F.4th 958, 960 (8th Cir. 2021) ("We may affirm the district court's dismissal on any basis supported by the record." (citation omitted)).

## IV.

Finally, Graff asserts that the district court erred in dismissing his claim of unjust enrichment relating to the remaining premiums owed through the Policy's maturity date. We find no error. Under Minnesota law, equitable remedies, including recovery under a theory of unjust enrichment, "cannot be granted where the rights of the parties are governed by a valid contract." Loftness Specialized Farm Equip., Inc. v. Twiestmeyer, 742 F.3d 845, 854 (8th Cir. 2014) (citation omitted). Graff emphasizes that he did not plead a breach-of-contract claim but instead filed a declaratory judgment action alleging a violation of the RIPA. Accordingly, if a trier of fact determines that the Policy's terms are illegal, Graff argues that he must be permitted to claw back the premiums already remitted and be relieved of his remaining obligations. However, Graff does not contest—and his complaint indeed acknowledges—that the Policy establishes the rights of the parties and governs their dispute; the existence of this contract, which forms the basis of Graff's lawsuit, thus precludes any recovery pursuant to a cause of action for unjust enrichment. See Gisairo v. Lenovo (U.S.) Inc., 516 F. Supp. 3d 880, 893 (D. Minn. 2021) (applying Minnesota law) ("A claim for unjust enrichment fails when there is 'no dispute that a written contract governs the at-issue conduct.'" (citation omitted)).

Furthermore, Brighthouse will not be unjustly enriched, as it will receive the amounts to which it is entitled under the Policy. See Schaaf v. Residential Funding Corp., 517 F.3d 544, 554 (8th Cir. 2008) (applying Minnesota law) ("[U]njust enrichment does not occur when a defendant 'is enriched by what he is entitled to under a contract or otherwise.'" (citation omitted)). If Graff chooses to retain the Policy, then he must remit additional premiums according to the terms of the parties' contract. We cannot say that it would be "morally wrong" for Brighthouse to accept what it is owed. Mon-Ray, Inc. v. Granite Re, Inc., 677 N.W.2d 434, 440 (Minn. Ct. App. 2004); Loftness, 742 F.3d at 854 ("[U]njust enrichment should not be invoked merely because a party has made a bad bargain."). We affirm the district court's dismissal of this claim.

## V.

For the foregoing reasons, we affirm the judgment of the district court.

_____